**The PEOPLE of the State of Colorado, Complainant,**

v.

**Leroy R. MOYA, Attorney–Respondent.**

**No. 90SA142.**

Supreme Court of Colorado,
En Banc.

June 25, 1990.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Christopher A. Miranda, Gerash, Robinson & Miranda, P.C., Denver, for respondent.

PER CURIAM.

In this disciplinary proceeding we consider two consolidated cases involving several acts of misconduct by the respondent, Leroy R. Moya. A hearing panel of the Supreme Court Grievance Committee unanimously recommended, and Moya agreed, that he should be suspended from the practice of law for one year and one day. We accept the panel's recommendation.

A hearing board of the grievance committee consolidated the cases and heard this matter, and a hearing panel approved the findings and conclusions of the hearing board. Moya elected not to file exceptions to the hearing panel's report. *See* C.R.C.P. 241.20(b)(2). The hearing board's findings and conclusions were based on the stipulations of the parties and the testimony of

Moya and other witnesses before the hearing board.

## I.

Leroy R. Moya was admitted to the bar of this court on February 3, 1984. He is therefore subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

### A. *Representation of Bernadine Schobinger*

On June 25, 1987, Bernadine Schobinger retained Moya to represent her son in a criminal matter, paying Moya a retainer of $500. During the ensuing two weeks, Moya failed to contact Schobinger's son, who remained in jail. After Schobinger's efforts to contact Moya during that period proved unsuccessful, she retained substitute counsel to represent her son.

Schobinger eventually spoke with Moya by telephone nearly one month after employing him, and requested that he refund her retainer. Moya promised that on July 31 he would do so. Moya did not refund the retainer on the date promised. When Schobinger contacted Moya again on September 8, he explained that he had financial troubles and asked for an additional six weeks within which to make the payment. Moya never refunded the $500 retainer to Schobinger.

### B. *Representation of Defendants Sandoval and Smith*

On June 26, 1987, Messrs. Sandoval and Smith were arrested separately in Gilpin County for driving while under the influence ("DUI"), and ordered to appear for arraignment on July 20. Moya's conduct in the two cases gave rise to a request for investigation filed with the grievance committee.

#### 1.

On July 13, 1987, Sandoval retained Moya to represent him on the DUI charge and agreed to pay Moya a $600 retainer, which would be doubled in the event the case went to trial. On the date set for arraignment, Moya telephoned the court on Sandoval's behalf and requested a continuance until September 14. On August 19, Moya entered his appearance for Sandoval, tendered Sandoval's plea of not guilty, and requested a jury trial.

Sandoval failed to appear at the September 14 arraignment. The trial court then issued a warrant but stayed execution of the warrant until October 19. Both Moya and Sandoval appeared on that day, and Sandoval pled guilty to driving while ability impaired. Sentencing was scheduled for November 16.

Four days before the date set for sentencing, Moya telephoned the court and requested a continuance. The court agreed on the condition that Moya obtain the written consent of the surety on Sandoval's bond and report back to the court. Because Moya failed to file a written consent or contact the court again, the sentencing date was unchanged from November 16. Sandoval did not appear for sentencing on that date, and when Moya advised the court by telephone that he could not appear on that date either, the court told him that unless the surety's written consent was filed by the next day, a warrant would issue for Sandoval's arrest. Sandoval then obtained the written consent and gave it to Moya, but Moya failed to file it with the court, resulting in the issuance of a warrant for Sandoval's arrest as promised.

Moya also failed to appear at the rescheduled December 14 sentencing hearing. Having expended his funds on the retainer paid Moya, Sandoval decided to waive counsel and was then sentenced.

#### 2.

Defendant Smith also retained Moya to represent him on a DUI charge. On July 20, 1987, the date set for Smith's arraignment, Moya telephoned the court and requested a continuance. The matter was reset for September 14. On August 19, Moya entered his appearance for Smith, tendered Smith's plea of not guilty, and requested a jury trial. On September 14, the trial court set the matter for jury trial on December 9, 1987.

Moya failed to appear on December 9 for Smith's jury trial. Moya did not inform Smith that he would be unable to attend the trial. The court granted Smith's request for a continuance, but only on the basis that the trial would be to the court without a jury.

On May 9, 1988, Moya informed the court that he had been suspended from practicing law [1] and could not represent Smith at trial. The matter was then set for May 23, to reschedule Smith's trial. Moya attended the May 23 hearing, and the court reset Smith's trial for September 14. Moya had advised Smith some two days earlier that he had been suspended. Smith was unable to contact Moya after the May 23 hearing. Moya and Smith both failed to appear on September 14 for Smith's rescheduled trial.

### C. *Representation of Tom Ornelas*

In late 1986 or early 1987, Tom Ornelas retained Moya to represent him in a criminal matter in Adams County District Court. Moya entered his appearance for Ornelas on January 5, 1987. Ornelas pled guilty to one misdemeanor charge on January 12, 1988, and sentencing was set for March 21. After two continuances, the sentencing hearing was eventually set for June 21.

Moya neither appeared for the June 21 hearing nor informed the court in advance of his inability to attend. Ornelas had tried to contact Moya prior to the sentencing hearing, without success. Sentencing was reset for July 22.

Moya also failed to appear at the rescheduled July 22 sentencing hearing. The trial court again reset sentencing for August 30, to enable Ornelas to retain substitute counsel. A public defender appeared for Ornelas at the August 30 hearing, and Ornelas was sentenced.

Moya never contacted the trial court or Ornelas to explain his conduct. Orlenlas' repeated attempts to contact Moya were

unsuccessful. Moreover, Moya closed his office during this period without notifying Ornelas.

### D. *Representation of Jacqueline M. Mendoza*

In June or July 1986, Jacqueline M. Mendoza and her mother, Lorraine E. Friend, retained Moya to represent Mendoza in a dissolution of marriage action, paying Moya a retainer of $590 in installments. Mendoza was anxious to obtain the marriage dissolution, custody of the couple's minor child and a support order as quickly as possible. Process was served on Mendoza's husband in September 1986, but Moya never filed the petition for dissolution with the court. As found by the hearing board, Mendoza "met with a judge and answered some questions concerning custody." [2] Moya did not appear. Thereafter, Mendoza heard nothing more from Moya.

Mendoza's mother eventually retained substitute counsel in early 1988 to aid her daughter in obtaining custody of the couple's minor son and securing adequate child support. Moya failed to reply to substitute counsel's attempts to contact him by mail and telephone concerning the status of the dissolution of marriage action.

On July 13, 1988, Mendoza sent Moya a letter terminating his services and requesting a full refund of her retainer. Moya has never contacted Mendoza concerning her request.

### E. *Representation of Robert and Anthony Duran*

In late September or early October 1986, Robert and Anthony Duran retained Moya, their uncle, to represent them in a civil suit brought against them by a bank to collect the unpaid balance on a promissory note together with attorney fees. Moya filed an answer on October 8, 1986; the parties eventually settled the case. By the terms of the settlement agreement, the Durans

---

1. The suspension was based on failure to satisfy continuing legal education requirements. *See* C.R.C.P. 260.6(10); *Verner v. Colorado*, 533 F.Supp. 1109 (D.Colo.1982), *aff'd*, 716 F.2d 1352 (10th Cir.1983), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2175, 80 L.Ed.2d 558 (1984).

2. No further information concerning the nature of the hearing appears in the record.

would pay $1,500 in full settlement of the bank's claim in $100 increments, commencing September 15, 1987. In the event of default, the bank would notify Moya and, absent cure within ten days, would obtain a defaul' _.dgment in the amount of $2,800.

On January 28, 1988, the bank notified Moya that the Durans were in default. Moya neither responded nor advised the Durans of the default notice. The bank then obtained a default judgment against the Durans for $2,200.[3] The Durans first learned that the bank had obtained judgment against them when a writ of garnishment issued in August 1988. Upon learning of the judgment, the Durans attempted to contact Moya, but were unable to do so because his telephone had been disconnected.

### F. Representation of Jose Ray Trujillo

In June 1987, Jose Ray Trujillo retained Moya to represent him in connection with a DUI charge and various other traffic charges brought against Trujillo in April of that year. Trujillo paid Moya a $1,000 retainer. When Trujillo and Moya appeared for arraignment on May 4, 1988, Moya informed the court that he had been suspended from the practice of law on April 21, 1988, for failure to comply with continuing legal education requirements. Moya stated that he hoped to regain his license by August 3, the date set for a jury trial on the charges against Trujillo. Moya also told his client that he would contact Ken Padilla, Esq., and ask him to represent Trujillo. Moya never contacted Padilla.

When Moya failed to appear on August 3 for Trujillo's trial, the case was reset for November 7, 1988. Trujillo telephoned Moya during the interim without success. Moya again failed to appear on November 7 for Trujillo's trial, without contacting either the court or Trujillo in advance.

Moya did not refund any of Trujillo's $1,000 retainer. Trujillo was forced to retain substitute counsel, incurring an additional $1,455 in attorney fees.

3. The record does not explain the difference between the $2,800 agreed amount and the

### G. Representation of Leonard Ingalls

In March 1986, Leonard Ingalls retained Moya to represent him in a personal injury action on a contingent fee basis. In April, Moya notified the opposing party, the Colorado Department of Corrections, of Ingalls' intent to sue, but never filed suit. Ingalls left several messages for Moya requesting that his file be returned to him. Moya has not returned the file.

### H. Criminal Prosecution of Moya

On November 6, 1987, Moya was arrested for offenses including DUI, careless driving, resisting arrest and driving without proof of insurance. Moya failed to appear on the date set for his arraignment. The court then issued a bench warrant, which was later canceled. Moya entered a plea of guilty to DUI on July 6, 1988, and has paid a $600 fine and $384 in costs.

### I. Failure to Cooperate with the Grievance Committee

Moya failed to respond to three of the requests for investigation sent by the grievance committee, by certified mail. In each case, the return receipt indicated delivery to Moya or someone purporting to sign for him. Moya also failed to respond to the grievance committee's reminders of his duty to respond and the consequences of failure to cooperate. On one occasion a grievance committee investigator was able to contact Moya by telephone and make an appointment to discuss complaints pending against him. Although Moya kept the appointment and promised to file responses in the grievance proceedings, he failed to do so.

### II.

Moya's conduct demonstrates a serious indifference to the welfare of his clients and the status of their cases. As the parties stipulated, Moya violated several provisions of the Code of Professional Responsibility: DR 1–102(A)(1) (violating a disciplinary rule), DR 1–102(A)(5) (engaging in

$2,200 judgment; presumably, it is based on payments made by the Durans prior to default.

conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in conduct that adversely reflects on a lawyer's fitness to practice law), DR 2–110(A)(3) (withdrawing from employment without refunding any unearned retainer), DR 6–101(A)(3) (neglecting a legal matter entrusted to a lawyer), and DR 9–102(B)(4) (failing to return client funds as requested).

Moya's conduct is grounds for discipline under C.R.C.P. 241.6 (misconduct justifies discipline), C.R.C.P. 241.6(1) (violating the Code of Professional Responsibility justifies discipline), and C.R.C.P. 241.6(7) (failing to respond to a request by the grievance committee justifies discipline).

We agree with the recommendation that Moya be suspended from the practice of law for a period of one year and one day. We believe that a more severe sanction, possibly as great as disbarment, would be required but for the facts that Moya is now on disability inactive status, his acts of misconduct all appear to stem from alcoholism, and he has demonstrated recognition of the problem and is taking positive steps to remedy it.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (hereinafter *"ABA Standards"*) prescribes suspension when a lawyer

> knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client, 4.12;
>
> knowingly fails to perform services for a client and causes injury or potential injury to a client, *id.* at 4.42(a);
>
> engages in a pattern of neglect and causes injury or potential injury to a client, *id.* at 4.42(b);
>
> knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding, *id.* at 6.22; or
>
> knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system, *id.* at 7.2.

This court has suspended an attorney for a period of one year and one day for neglecting client matters, misrepresenting the status of a case to a client, and failing to refund unearned fees when requested to do so by the client. *See People v. Craig,* 708 P.2d 787 (Colo.1985). Moreover, on numerous occasions this court has disbarred attorneys for engaging in a pattern of such egregious conduct when the attorneys had a prior disciplinary record or failed to cooperate with the grievance committee. *See, e.g., People v. Greene,* 773 P.2d 528 (Colo.1989); *People v. Kengle,* 772 P.2d 605 (Colo.1989); *People v. Coca,* 732 P.2d 640 (Colo.1987). In a case containing many similarities to the one before us, we disbarred an attorney notwithstanding his lack of any prior disciplinary record and his inexperience in the practice of law. *See People v. Reeves,* 766 P.2d 1192 (Colo.1988).

The *ABA Standards* also suggest certain factors that aggravate or mitigate an attorney's misconduct and therefore increase or decrease the appropriate sanction. Certain aggravating factors outlined in the *ABA Standards* are present in this case. Moya's conduct constituted multiple offenses and a pattern of misconduct. *See id.* at 9.22(c) and –(d). Moya also failed to respond to requests for investigation sent him by the grievance committee, thereby obstructing disciplinary proceedings. *Cf. id.* at 9.22(e) (intentional failure to comply with rules or orders of disciplinary agency).

In mitigation, Moya does not appear to have acted out of any dishonest or selfish motive. *See id.* at 9.32(b). Although he was suspended for failure to satisfy continuing legal education requirements, he has no prior disciplinary record. *See id.* at 9.32(a). Moya is relatively inexperienced in the practice of law. *See id.* at 9.32(f). During the period of Moya's misconduct, he suffered from serious personal and emotional problems caused by his alcoholism and the resulting deterioration in his finances and family life. *See id.* at 9.32(c), –(h). Initially, Moya denied his alcoholism but then experienced a period of increasing recognition that he has abused alcohol for a long time and that alcoholism is at the

heart of his professional misconduct and personal problems. Moya voluntarily placed himself on disability inactive status in September 1989, thereby demonstrating his growing recognition of the seriousness of his problems and eliminating risk to the public from his continued practice of law. Since beginning therapy to treat his alcoholism, Moya has begun to rehabilitate himself. *See id.* at 9.32(j); *People v. Driscoll,* 716 P.2d 1086 (Colo.1986).

The hearing board heard evidence concerning Moya's efforts to cope with his alcoholism through Alcoholics Anonymous and therapy and his progress and favorable prognosis. Moya also presented evidence that he was dedicated to the practice of law as a helping profession and that he has the skills and ability to function effectively as a lawyer. Disciplinary counsel and Moya joined in recommending that the sanction be limited to a suspension of one year and one day, and the hearing board and hearing panel agreed. Our willingness to accept this recommendation in the face of Moya's extensive professional misconduct is grounded in large part on the fact that he is now on disability inactive status. His reinstatement depends on his ability to show by clear and convincing evidence that his disability has been removed and that he is competent to resume the practice of law. *See* C.R.C.P. 241.23. This provides the necessary protection to the public that Moya will not practice law unless and until his efforts to gain control over his alcoholism prove successful.

## III.

We conclude that suspension for one year and one day is appropriate. It is hereby ordered that Leroy R. Moya be suspended from the practice of law, effective July 18, 1990. It is further ordered that Moya pay costs in the amount of $203.01 within 30 days of the date of this order, and make restitution to the clients involved in this proceeding in amounts of their respective losses plus interest at the rate of 9% per annum from the dates the sums were advanced until paid. The amounts shall be determined by the disciplinary counsel, subject to review by the grievance committee and then by this court in event of dispute, and shall be paid at 600 Seventeenth Street, Suite 506–S, Denver, Colorado 80202. Moya shall not be reinstated until he has complied with C.R.C.P. 241.-22(b), concerning reinstatement after suspension, as well as C.R.C.P. 241.23, concerning reinstatement after transfer to disability inactive status, and has paid the costs and restitution as ordered.

ERICKSON, J., dissents.

Justice ERICKSON dissenting:

I would impose a more severe sanction for the respondent's repeated acts of professional misconduct.